**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| JUSTIN K. DARNEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  2:13CV77 NAB |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Justin K. Darnel brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*; and application for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.*  All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).  Plaintiff proceeds in this cause *pro se.*  Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, it is affirmed.

### I.  Procedural History

On February 12, 2011, plaintiff filed an application for DIB – considered by

the Social Security Administration (SSA) to be protectively filed January 20, 2011 – in which he claimed he became disabled on August 1, 2009, because of arthritis, sacroiliitis, post-traumatic stress disorder (PTSD), panic disorder, anxiety disorder, major depressive disorder, and insomnia. (Tr. 101-07, 131.) The SSA denied this application for benefits on March 18, 2011. (Tr. 31, 34-38.) Thereafter, on October 14, 2011, plaintiff filed an application for SSI, again claiming a disability onset date of August 1, 2009. (Tr. 110-15.) Upon plaintiff's request, a hearing was scheduled before an administrative law judge (ALJ) on both of plaintiff's applications. (Tr. 61-66.) Plaintiff subsequently waived his right to personally appear at the hearing for the reason that he was incarcerated. (Tr. 95-96.) On June 21, 2012, without conducting an oral hearing, the ALJ issued a decision based on the evidence of record, finding that plaintiff was not disabled inasmuch as his medically determinable impairments were not severe. (Tr. 9-18.)[1] On June 13, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 1-5.) The ALJ's decision thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

In the instant action for judicial review, plaintiff raises numerous claims that the ALJ's decision is not supported by substantial evidence on the record as a whole. In his *pro se* Complaint, plaintiff argues that the ALJ erred by failing to

---

[1] At the time this decision was rendered, plaintiff remained incarcerated. (*See* Tr. 7-8.)

identify additional impairments that are severe; by improperly evaluating his credibility; and by failing to fully develop the record. Plaintiff also contends that his statutory right to counsel was violated when his attorney withdrew from the case prior to his scheduled administrative hearing. In his *pro se* Brief in Support of the Complaint, plaintiff raises additional claims, and specifically, that the ALJ erred when he failed to elicit vocational expert testimony; improperly weighed evidence obtained from medical sources; inaccurately assessed plaintiff's residual functional capacity (RFC); made no findings on plaintiff's past relevant work; and failed to consider the Missouri Department of Corrections' (MDOC's) determination that plaintiff was disabled.[2] Plaintiff requests that the ALJ's decision be reversed and that he be awarded benefits; or that the matter be remanded for further proceedings, including for consideration of new and material evidence. The Court will address plaintiff's contentions in turn.

As an initial matter, contrary to plaintiff's assertion, he was not denied a statutory right to counsel in the circumstances of this case. A review of the record shows that plaintiff secured counsel during the administrative process in October 2011. Counsel withdrew from the action on April 3, 2012. At the time, the matter was scheduled for hearing before an ALJ on June 4, 2012. Subsequent to counsel's withdrawal, plaintiff's hearing was rescheduled to May 14, 2012. On

---

[2] With his Briefs, plaintiff has submitted additional documents that were not a part of the

May 12, 2012, plaintiff waived his right to appear at the hearing and requested that his case be decided on the written evidence. Plaintiff claims that counsel's withdrawal prior to his scheduled hearing violated his statutory right to counsel.

While a claimant is *permitted* to have counsel represent him during the administrative process, 42 U.S.C. § 406; 20 C.F.R. §§ 404.1700, *et seq.;* 20 C.F.R. §§ 416.1500, *et seq.,* nothing in the statute or in the regulations *requires* such legal representation. *Granger v. Finch*, 425 F.2d 206, 208 (7th Cir. 1970); *Fugate v. Colvin*, No. 2013-113 (WOB-CJS), 2014 WL 1168838, at *6 (E.D. Ky. Mar. 18, 2014). Instead, what is required is written notification to claimants of options for obtaining attorney representation upon being notified of an adverse determination. 42 U.S.C. § 406(c); 20 C.F.R. §§ 404.1706, 416.1506. A review of the record here shows plaintiff to have been provided such statutorily-required notice (Tr. 34-38, 54-60) and indeed that he secured legal representation in October 2011 (Tr. 52-53). If a claimant has chosen to obtain counsel, he has a right to be represented by such counsel during the administrative hearing before an ALJ. *Radica v. Astrue*, No. 4:08CV0458 AGF, 2009 WL 2948465, at *8 (E.D. Mo. Sept. 14, 2009). Here, however, upon plaintiff's waiver of his appearance at a hearing and request for decision on the written evidence, no oral hearing was held. As such, it cannot be said that plaintiff's right to be represented by counsel at the administrative hearing

---

administrative record, including documents from the MDOC. (*See* Doc. Nos. 20, 29.)

was violated. To the extent plaintiff challenges the manner and method by which counsel withdrew from the case, such a claim does not provide a cognizable basis for judicial review of the Commissioner's final decision. *See Russell on Behalf of Russell v. Chater*, 62 F.3d 1421 (8th Cir. 1995) (unpublished) (per curiam) (table).

The Court thus turns to the ALJ's decision to determine whether it is supported by substantial evidence on the record as a whole.

As noted above, the ALJ did not conduct an oral hearing in this case and determined plaintiff's claim on the written evidence of record. Given plaintiff's waiver of appearance at an oral hearing, the ALJ was permitted to proceed in this manner. 20 C.F.R. §§ 404.948(b), 416.1448(b). In his decision, the ALJ noted plaintiff's alleged disability onset date of August 1, 2009, and determined his disability insurance status to have expired September 30, 2009. The ALJ found that plaintiff had the medically determinable impairments of depression, anxiety, and sacroiliitis, but that they were not severe and thus could not provide a basis for disability. For the following reasons, the ALJ did not err in this determination.

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner engages in a five-step

sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Step 1 considers whether the claimant is engaged in substantial gainful activity. If so, disability benefits are denied. At Step 2, the Commissioner decides whether the claimant has a "severe" medically determinable impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities. If the claimant's impairment(s) is not severe, then he is not disabled. If the impairment(s) is severe, the Commissioner then determines at Step 3 whether such impairment(s) is equivalent to one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. If claimant's impairment(s) meets or equals one of the listed impairments, he is conclusively disabled. At Step 4, the Commissioner establishes whether the claimant's impairment(s) prevents him from performing his past relevant work. If the claimant can perform such work, he is not disabled. Finally, if the claimant is unable to perform his past work, the Commissioner continues to Step 5 and evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. The claimant is entitled to disability benefits only if he is not able to perform other work.

The ALJ here terminated the sequential analysis at Step 2 upon finding that plaintiff's medically determinable impairments were not severe. A severe impairment is one that significantly limits a claimant's physical or mental ability to

perform basic work activities and has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(a)(4), (c) and 416.920(a)(4), (c); 20 C.F.R. §§ 404.1509, 416.909. "The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (internal citations and quotation marks omitted) (brackets in *Martise*). The claimant has the burden of showing a severe impairment, but the burden at this stage of the analysis "is not great." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001). While establishing "severity" may not be an onerous requirement for a claimant to meet, "it is also not a toothless standard[.]" *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007).

At the time of the ALJ's decision, the evidence of record showed that on August 16, 2008, plaintiff went to urgent care at University Hospital with complaints of a recent worsening of chronic pain on the left side from the low spine down the left leg. Plaintiff was twenty-six years of age. Plaintiff reported previous prescriptions for Flexeril not to have helped in the past but that he usually takes Vicodin for such flare ups in pain. Physical examination showed tenderness

to palpation from the low thoracic to the lower lumbar spine, with mild decreased range of motion because of pain and stiffness. Straight leg raising was negative, and plaintiff had full leg strength bilaterally. Deep tendon reflexes were decreased. Dr. Keith Groh diagnosed plaintiff with low back pain and gave instruction as to exercises. Dr. Groh directed plaintiff to take over-the-counter medication but also gave him a limited amount of Vicodin for acute pain flare ups. Dr. Groh noted medical records to give rise to concern for narcotic drug seeking behavior and dependency. Plaintiff also reported that he had been out of Zoloft for two days and felt a little "edgy," but was not in crisis or having severe anxiety. Psychiatric examination was unremarkable. Plaintiff was noted to display no overt signs of distress or anxiety. Dr. Groh diagnosed plaintiff with depression and anxiety and prescribed Zoloft. (Tr. 230-32.)

On August 18, 2008, plaintiff went to Boone Hospital Center with complaints of having a panic attack while at work. Plaintiff reported that he had run out of medication. Plaintiff became calmer while in the emergency room. With respect to physical complaints, plaintiff reported that weather changes worsened his pain but that he was currently doing okay. Plaintiff's past medical history was noted to include ankylosing spondylitis, anxiety, depression, PTSD, and chronic low back pain. Plaintiff's medications were noted to include Zoloft, Xanax, and Vicodin. Examination showed plaintiff to be anxious but was

otherwise normal.  Plaintiff was given Ativan and was discharged in stable

condition.  Plaintiff's diagnosis upon discharge was acute anxiety reaction.

Plaintiff was instructed to take Xanax as directed for anxiety.  Plaintiff was also

instructed to follow up with Dr. Silney as soon as possible.  (Tr. 207, 213-14.)

Plaintiff returned to urgent care at University Hospital on August 27, 2008,

with continued complaints of left lower back and leg pain, and new complaints of

pain in the right upper chest and back.  Physical examination showed tenderness to

palpation about the left lower back with limited range of motion.  Plaintiff had

good strength about the lower extremities.  He was continued in his diagnosis of

chronic low back pain and was prescribed Ultram.  Dr. Phu Tran instructed

plaintiff to follow up with his primary care physician and with a pain clinic for

further evaluation.  (Tr. 228-29.)

On September 27, 2008, plaintiff visited the emergency room at Boone

Hospital Center in an anxious state because he missed his appointment and did not

get refills of his medications.  Examination was otherwise normal.  Plaintiff was

given Ativan in the emergency room and was prescribed Zoloft and Ativan upon

discharge.  Plaintiff was diagnosed with anxiety and depression and was

discharged in improved condition.  (Tr. 206, 211-12.)

Plaintiff visited Dr. Sandesh Pandit at the Family Medicine Clinic at

University Hospital on September 24, 2008.  Plaintiff reported having previously

seen Dr. Daniel Vinson and that he was currently seeing a rheumatologist regularly for ankylosing spondylitis, with an upcoming appointment noted to be scheduled on October 1. Plaintiff also reported that he was in the process of establishing care with a psychiatrist. Physical examination was unremarkable. Straight leg raising was negative. Psychiatric examination showed plaintiff's affect to be flat but was otherwise unremarkable. Dr. Pandit noted plaintiff's past medical history to include ankylosing spondylitis, depression, PTSD, and anxiety. Dr. Pandit gave plaintiff a one-month supply of medication to carry him through until he was able to meet with a psychiatrist. Dr. Pandit also emphasized to plaintiff that he keep his appointment with the rheumatologist. (Tr. 225-27.)

After this examination by Dr. Pandit, the medical record is silent until February 2010 at which time plaintiff was incarcerated and received medical care from the MDOC. The record shows plaintiff to have received such care for a period from February 2010 to July 12, 2010. (Tr. 237-64, 320.) During this limited period, plaintiff complained of joint pain and back pain for which he was prescribed Neurontin. Adjustments were made to this medication in response to plaintiff's complaints of increased pain. It was noted that an x-ray taken in January 2010 showed sacroiliac sclerosis suggestive of sacroiliitis, and plaintiff was diagnosed with varying forms of low back pain due to sacroiliitis. Plaintiff never demonstrated any limited range of motion, or any difficulty with ambulation or

with getting up and down.  In March, plaintiff was provided a lay-in restriction and was instructed not to lift in excess of twenty pounds.  It was opined that plaintiff could work with such restriction.  Throughout April, plaintiff failed to appear for appointments with healthcare providers and repeatedly refused to take prescribed medication, and specifically Thorazine, because it made him feel sick.  An intra-muscular injection of Depo-Medrol was administered in May, and plaintiff was prescribed Meloxicam.  Plaintiff was released from custody on July 12, 2010.  No medications were provided to him upon his release.

After his release from prison, plaintiff visited the emergency room at Boone Hospital Center on July 14, 2010.  Plaintiff reported that he had moved from Oregon two days prior and left his medications in Oregon.  Plaintiff requested refills of Zoloft and Xanax.  Plaintiff also complained of pleuritic chest pain.  Plaintiff's past medical history was noted to include PTSD, arthritis, and panic attacks.  Examination showed tenderness to the chest wall but was otherwise normal.  Plaintiff was prescribed Zoloft, Ativan, and Naproxen and was instructed to follow up with a primary care physician and psychiatrist.  (Tr. 208-10.)

Plaintiff visited Dr. Amy Williams at the Family Medicine Clinic on July 19, 2010.  Plaintiff reported a history of depression for which he took Zoloft and that the medication provided good control.  Plaintiff also reported a history of low back pain for which he took Celebrex, glucosamine, Motrin, Vicodin, and analgesic

balm. Plaintiff requested refills on all such medications. Plaintiff reported that x-rays taken in Oregon seven months prior showed ankylosis or sacroiliitis and that he had been evaluated by a rheumatologist in 2005. Plaintiff also reported a recent onset of left shoulder pain, which improved with movement. Plaintiff denied any numbness or tingling. Physical examination showed normal range of motion with normal strength, no tenderness, and no swelling. Psychiatric examination showed plaintiff to be cooperative. Dr. Williams diagnosed plaintiff with low back pain and left shoulder pain and referred plaintiff to the orthopedic clinic for evaluation. Dr. Williams determined plaintiff's back pain to be stable, noting there to be little evidence for a diagnosis of ankylosing spondylitis. Tramadol, Naproxen, and Celebrex were prescribed. Dr. Williams reported that she does not prescribe narcotic medication on first visits and counseled plaintiff as to the need to taper off of pain medications and get a solid diagnosis. Dr. Williams offered a referral to the rheumatology clinic, but plaintiff declined. Plaintiff was also diagnosed with depression and anxiety, which were determined to be stable. Zoloft and Xanax were prescribed. (Tr. 219-23.)

Plaintiff was again incarcerated at the MDOC beginning July 30, 2010, whereupon he received medical care through February 2011. (Tr. 235-36, 264-319.) Upon his re-incarceration, plaintiff underwent a physical examination during which he denied having any musculoskeletal issues. It was noted that plaintiff's

extremities were strong.  Plaintiff's behavior was appropriate with no anxiety noted.  It was determined that there was no necessity for a mental health referral and that plaintiff would undergo routine mental health checks.  In August, plaintiff refused blood pressure medication because it caused headaches.  In September, plaintiff refused to take Lamictal because it caused a rash.  Plaintiff was prescribed Naproxen for back and neck pain during this period.  Plaintiff also took acetaminophen, Neurontin, and analgesic balm.  It was noted that plaintiff's medication improved his symptoms and controlled his condition.

In November 2010, it was noted that plaintiff's ability to bend at the waist was limited to thirty to forty-five degrees, and straight leg raising was restricted.  A lay-in restriction of "no snow shoveling" was imposed.  Plaintiff was instructed to apply lidocaine patches to the lumbosacral area.  Plaintiff was consistently diagnosed with chronic low back pain.  In December, plaintiff requested that he be prescribed Tramadol.  Plaintiff reported a history of being diagnosed with ankylosing spondylitis, chronic pain syndrome, chronic lumbosacral pain with sciatica, depressive disorders, and panic attacks.  Plaintiff was given consistent diagnoses, and it was determined that lay-in was appropriate.  In January 2011, plaintiff reported that the diagnosis of ankylosing spondylitis had been given by Dr. Vinson whom he had seen prior to incarceration.  Current examination showed marble-sized knots upon palpation to the upper lumbar area.  Plaintiff was noted to

have full range of motion about all extremities.  Plaintiff was diagnosed with arthritis.  For severe pain, plaintiff was encouraged to engage in low impact activity, such as walking, to maintain joint movement.  Plaintiff was also instructed to apply warm compresses, perform range of motion exercises, and to balance rest and exercise.  Ibuprofen was given.  On February 11, plaintiff reported his pain to be at a level five to ten on a scale of one to ten, with increased pain in his neck.  No grimacing was noted throughout the medical encounter.  Plaintiff was diagnosed with chronic back pain, and Tylenol was given.

On March 18, 2011, Mark Altomari, Ph.D., a psychological consultant with disability determinations, completed a Psychiatric Review Technique Form in which he reported there to be insufficient evidence relating to plaintiff's history of depression and anxiety upon which he could opine as to the effects of such impairments.   (Tr. 321-31.)

No other medical evidence appears in the administrative record.

On this record evidence, the ALJ determined plaintiff's medically determinable impairments to be sacroiliitis, depression, and anxiety, but that such impairments, either singly or in combination, did not significantly limit (or be expected to significantly limit) plaintiff's ability to perform basic work activities for twelve consecutive months.  The ALJ therefore found plaintiff not to have a severe medically determinable impairment(s) upon which disability could be

found.  (Tr. 14.)  Substantial evidence on the record as a whole supports this
determination.

With respect to plaintiff's physical impairment, the ALJ noted the report that
a January 2010 x-ray showed sacroiliitis, but that medication improved and
controlled plaintiff's symptoms associated with this impairment.  The record shows
that during his incarceration from February through July 2010, plaintiff was
prescribed Neurontin and was provided acetaminophen and analgesic cream for his
symptoms.  He exhibited no limited range of motion during this period and had no
difficulty with ambulating or moving between sitting and standing.  Although he
was restricted to lifting no more than twenty pounds in March, physical
examination upon his release from prison in July 2010 was normal in all respects
with normal range of motion, normal strength, and no tenderness noted.  Dr.
Williams considered plaintiff's low back pain to be stable at that time and noted
that there was not enough evidence for a "solid diagnosis."  Upon his re-
incarceration, plaintiff again exhibited symptoms of back pain in August 2010.
When he was given medication as previously prescribed, however, his symptoms
were noted to improve and be controlled.  A restriction of "no snow shoveling"
was imposed in November upon a finding of limited range of motion about the
waist and restricted straight leg raising, but with medication therapy, plaintiff
demonstrated full range of motion in January 2011 and was given instruction as to

appropriate exercises.  Limited range of motion about the waist was noted again in February, for which plaintiff was given only Tylenol.

Given the conservative treatment rendered for plaintiff's sacroiliitis, with such treatment controlling plaintiff's symptoms, the ALJ found this physical impairment not to be severe.  The ALJ did not err in this determination.  Where an impairment is well controlled with medication, a finding of disability is precluded. *Perkins v. Astrue*, 648 F.3d 892, 901 (8th Cir. 2011).  *See also Kirby*, 500 F.3d at 708 (physical impairment not severe where medical evidence showed no exertional difficulties and normal range of movement); *Wilson v. Chater*, 76 F.3d 238, 241 (8th Cir. 1996) (ALJ did not err at Step 2 of sequential analysis by finding claimant's medically determinable impairments not to be severe inasmuch as they were controllable by medication and diet); *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996) (arthritis condition that improves with medication is not severe).

With respect to plaintiff's mental impairments, the ALJ likewise noted the record to show that medication controlled the related symptoms.  Indeed, the record shows plaintiff's symptoms to manifest only when he ran out of his medication and that, even then, the symptoms were minimal.  In July 2010, Dr. Williams considered plaintiff's mental impairments to be stable.  In addition, the ALJ noted that the treatment itself was minimal, noting that plaintiff never participated in counseling, saw a therapist, or required any hospitalization.   Given

the conservative treatment rendered for plaintiff's anxiety and depression, with such treatment controlling plaintiff's symptoms, the ALJ found these mental impairments not to be severe.[3]  The ALJ did not err in this determination.  *See Perkins,* 648 F.3d at 901; *Buckner v. Astrue*, 646 F.3d 549, 556-57 (8th Cir. 2011); *Johnston v. Apfel*, 210 F.3d 870, 874-75 (8th Cir. 2000) (mental impairment not severe where exacerbation was isolated occurrence and symptoms responded to medication).

The ALJ further found that plaintiff's subjective complaints were inconsistent with the record as a whole and did not support a finding that his impairments were severe.  This finding is supported by substantial evidence on the record as a whole.  As noted above, the ALJ specifically found that conservative treatment controlled plaintiff's impairments.  *See Perks v. Astrue,* 687 F.3d 1086, 1092-93 (8th Cir. 2012) (conservative treatment for back pain consisted of medication only, which was effective); *Clevenger v. Social Sec. Admin.*, 567 F.3d 971, 976 (8th Cir. 2009) (appropriate credibility determination included finding that claimant was "overall improved" after taking pain medication); *Brace v. Astrue*, 578 F.3d 882, 885-86 (8th Cir. 2009) (evidence showed that, when taken, medication was successful in controlling mental illness); *Black v. Apfel*, 143 F.3d

---

[3] The ALJ also analyzed plaintiff's mental impairments under the sequential analysis required by 20 C.F.R. §§ 404.1520a, 416.920a and concluded that plaintiff's mental impairments resulted in no limitations in all relevant domains of functioning and caused no episodes of decompensation of extended duration, and thus were not severe under the regulations.  (Tr. 17.)

383, 386-87 (8th Cir. 1998) (conservative course of treatment inconsistent with complaints of debilitating pain). The ALJ also noted plaintiff's activities of daily living to include cleaning, doing laundry, and making daily visits to the library and that plaintiff reported talking to his girlfriend every other day and being able to go places without the need to be accompanied by someone. The ALJ also noted that plaintiff's claim that he had difficulty paying attention for sustained periods was contrary to his reported ability to manage his finances, which included paying bills, using a checkbook, and managing a savings account; as well as his stated hobbies of reading, writing, and studying biology, history, and law.[4] Such activities are inconsistent with allegations of disability due to physical and mental impairments. *Perks,* 687 F.3d at 1092-93; *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010).

Finally, the ALJ noted plaintiff's statements themselves to be inconsistent, noting that plaintiff reported to healthcare providers during his incarceration that he previously abused drugs while on other occasions he reported that he had no history of such abuse. In addition, the record shows that subsequent to his release from prison, plaintiff reported to his healthcare providers that he had recently been in "Oregon" where he had received medical care, when in fact plaintiff had been in prison. Such inconsistency in a claimant's statements provides a valid reason to

_____

[4] A review of the record shows the ALJ's summary of plaintiff's activities to have been taken

discredit his subjective complaints. *E.g., Ply v. Massanari*, 251 F.3d 777, 779 (8th Cir. 2001).

Accordingly, in a manner consistent with and as required by *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted), the ALJ considered plaintiff's subjective complaints on the basis of the entire record and set out numerous inconsistencies that detracted from his credibility. Because the ALJ's determination not to credit plaintiff's subjective complaints is supported by good reasons and substantial evidence, the Court defers to this determination. *Renstrom v. Astrue,* 680 F.3d 1057, 1065 (8th Cir. 2012); *Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005); *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). Because good reasons support his credibility determination, the ALJ's decision is accorded deference even if, as plaintiff contends, every *Polaski* factor is not discussed in depth. *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

To the extent plaintiff claims that the ALJ failed to consider the severity of his other impairments, and specifically, cervical spondylosis, stenosis, radiculopathy, rotoscoliosis, ulcerative colitis, and substance abuse disorder, a review of the evidence in the administrative record shows such claimed conditions not to be medically determinable impairments. Plaintiff was never diagnosed by any healthcare provider with these impairments, nor are there any recorded signs or

---

from the Function Report completed by plaintiff on February 21, 2011. (Tr. 144-51.)

laboratory findings showing such impairments.  Subjective statements alone cannot constitute a basis upon which to find the existence of an impairment.  *See* 20 C.F.R. §§ 404.1528(a), 416.928(a).  "[S]ymptoms . . . will not be found to affect [a claimant's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."  20 C.F.R. §§ 404.1529(b), 416.929(b).  *See also* 20 C.F.R. §§ 404.1508, 416.908 (to be considered as a basis for disability, a physical impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms.").  Accordingly, because the record shows these claimed impairments not to be medically determinable impairments, the ALJ did not err by failing to consider their severity.

Coupled with this argument, plaintiff contends that the ALJ failed to fulfill his duty to develop the record – as demonstrated by the ALJ's repeated reference to the "sparse record" – and that further development of the record would have shown additional impairments, additional treatment, and opinion evidence rendered by long term treating physicians.  Plaintiff argues that the ALJ's duty to develop the record was heightened in this case given his lack of representation by counsel.  Although the ALJ bears the responsibility to develop the record fairly and fully, the claimant ultimately bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment.  *Kamann v.*

*Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Id.* (internal quotation marks and citation omitted).

The record here contains medical evidence as secured by the SSA upon the information provided by plaintiff regarding his medical care and healthcare providers. Pursuant to 20 C.F.R. §§ 404.1512(d), 416.912(d), plaintiff's medical record was developed for the relevant period, and it provided sufficient evidence upon which the ALJ could determine plaintiff's medically determinable impairments and from which he could conclude that they were not severe, as discussed above. Plaintiff's cursory claim otherwise fails.

To the extent plaintiff claims that the ALJ failed to assess his RFC, and erred by failing to make findings regarding his past relevant work and by failing to elicit testimony from a vocational expert, such claimed errors are without merit inasmuch as the ALJ determined plaintiff not to be disabled at Step 2 of the sequential analysis, and such determination is supported by substantial evidence on the record as a whole. An ALJ does not assess a claimant's RFC nor consider past relevant work and/or vocational expert testimony until Steps 4 and 5 of the analysis. *See Brown v. Barnhart*, 390 F.3d 535, 538-39 (8th Cir. 2004); *Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir. 2001).

Finally, to the extent plaintiff claims that the ALJ erred by failing to consider the MDOC's determination of disability, the undersigned first notes that no determination of disability from the MDOC or from any other agency appears in the administrative record. In addition, a finding of disability by an agency other than a designated State agency or the Social Security Administration is not binding on the Commissioner. 20 C.F.R. §§ 404.1504, 416.904.

The undersigned has considered plaintiff's request to remand this matter to the Commissioner for consideration of the additional evidence submitted to the Court in support of plaintiff's claims. The undersigned has reviewed the additional documents (*see* Doc. Nos. 20, 29) and denies this request. To remand this case to the Commissioner for consideration of new evidence, the new evidence must be material and the claimant must show good cause for his failure to incorporate such evidence into the record in the prior proceeding. *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997). In addition, the new evidence must be relevant and probative of the claimant's condition for the time period for which benefits were denied, and "it must be reasonably likely that the Commissioner's consideration of this new evidence would have resulted in an award of benefits." *Id.* Of the 146 pages of additional documents submitted by plaintiff, the only arguable medical evidence contained therein consists of records from the MDOC that set out varied lay-in restrictions from January through March 2009, September 2009 to

September 2010, and November 2010 to March 2014, while plaintiff was incarcerated.  (*See* Doc. 20-1, pp. A4-A24.)  To the extent these records involve the time period for which benefits were denied, plaintiff has failed to show good cause for his failure to incorporate these records in the prior proceeding before the ALJ or Appeals Council.  In addition, plaintiff cannot demonstrate that such evidence would have provided a basis upon which the Commissioner could award benefits, inasmuch as a claimant is not eligible for SSI for any month throughout which he is a resident of a public institution, such as a prison, *Cook v. Astrue*, 629 F. Supp. 2d 925, 929 n.3 (W.D. Mo. 2009) (citing 20 C.F.R. § 416.211); nor is he eligible to receive DIB for any month during which he is confined in a penal institution or correctional facility for conviction of a felony, 20 C.F.R. § 404.468(a).  In the circumstances of this case, therefore, remand to the Commissioner for consideration of the additional material submitted by plaintiff would not be appropriate.

Accordingly, for the reasons set out above on the claims raised by plaintiff on this appeal, the ALJ's determination that plaintiff was not under a disability from August 1, 2009, through the date of the decision is supported by substantial evidence on the record as a whole, and plaintiff's claims of error are denied.

Therefore,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is

affirmed, and plaintiff's Complaint is dismissed with prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

Dated this 30th day of October, 2014.


　　/s/ Nannette A. Baker　　　　　　
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE